[Cite as *In re D.P.*, 2016-Ohio-747.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

IN RE:

      D.P.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 2-15-13

O P I N I O N

IN RE:

      D.P.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 2-15-14

O P I N I O N

**Appeals from Auglaize County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2012 DEL 188 and 2012 DEL 244**

**Judgments Reversed and Causes Remanded**

**Date of Decision: February 29, 2016**

**APPEARANCES:**

    *Charlyn Bohland* **for Appellant**

    *Nick Catania* **for Appellee**

**PRESTON, J.**

{¶1} Adjudicated delinquent child-appellant, D.P., appeals the September 9, 2015 judgment entry of the Auglaize County Court of Common Pleas, Juvenile Division, denying his motion requesting an additional 230 days of credit toward his commitment to the Ohio Department of Youth Services ("DYS"). For the reasons that follow, we reverse.

{¶2} On September 19, 2012, a complaint was filed against D.P. in case No. 2012 DEL 188 alleging that D.P. was a delinquent child for committing two counts of burglary in violation of R.C. 2911.12(A)(2), second-degree felonies if committed by an adult. (Case No. 2012 DEL 188, Doc. No. 1). On January 23, 2013, D.P. admitted to the allegations as charged, and the trial court adjudicated him a delinquent child as alleged in the complaint. (Case No. 2012 DEL 188, Doc. No. 36). In its disposition, the trial court committed D.P. to DYS for institutionalization for an indefinite term consisting of a minimum period of two years—one year for each offense, to be served consecutively—and a maximum period not to exceed D.P.'s attainment of the age of 21 years. (*Id.*). The trial court placed D.P. on community control and suspended his commitment to DYS upon D.P.'s acceptance into the West Central Juvenile Rehabilitation Center ("Rehabilitation Center"). (*Id.*). D.P. was accepted, and his placement in the

Rehabilitation Center began on January 28, 2013. (*See* Case No. 2012 DEL 188, Doc. No. 49).

**{¶3}** Meanwhile, on November 15, 2012, a complaint was filed against D.P. in the Mercer County, Ohio Court of Common Pleas, Juvenile Division, and then transferred to the Auglaize County Court of Common Pleas, Juvenile Division. (Case No. 2012 DEL 244, Doc. No. 1). The trial court assigned case No. 2012 DEL 244 to that case.[1] (*See id.*). That complaint alleged that D.P. was a delinquent child for committing one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony if committed by an adult, and a second count of attempted theft in violation of R.C. 2913.02(A)(1) and 2923.02(A), a second-degree misdemeanor if committed by an adult. (*Id.*).

**{¶4}** On April 4, 2013, D.P. appeared before the trial court for adjudication in case No. 2012 DEL 244. (*See* Case No. 2012 DEL 244, Doc. Nos. 16, 34). D.P. admitted to the allegations as charged, and the trial court adjudicated him a delinquent child as alleged in the complaint. (*Id.*). In its disposition, the trial court committed D.P. to DYS for institutionalization for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed his attainment of the age of 21 years, to be served consecutively to the commitment in case No. 2012 DEL 188 for a total minimum period of three years

---

[1] The record reflects that complaints were filed against D.P. in other cases that were addressed with case Nos. 2012 DEL 188 and 2012 DEL 244; however, we will discuss only case Nos. 2012 DEL 188 and 2012 DEL 244, which are the only cases relevant to this appeal.

-3-

and a maximum period not to exceed D.P.'s attainment of the age of 21 years. (Case No. 2012 DEL 244, Doc. No. 20). The trial court placed D.P. on community control and suspended his commitments to DYS on the condition that D.P. successfully complete the West Central Juvenile Rehabilitation Program. (*Id.*).

{¶5} On September 18, 2013, the trial court filed a judgment entry ordering D.P.'s release from the Rehabilitation Center. (Case No. 2012 DEL 188, Doc. No. 122).

{¶6} On March 21, 2014, following motions by the State requesting hearings on D.P.'s alleged community-control violations, the trial court adjudicated D.P. "a community control violator" as alleged in the State's motions. (Case No. 2012 DEL 188, Doc. No. 208); (Case No. 2012 DEL 244, Doc. No. 65). The trial court invoked D.P.'s suspended commitments to DYS. (*Id.*); (*Id.*). In its judgment entry, the trial court stated:

> The Court finds that [D.P.] has been held in a juvenile detention facility for a period of 17 days prior to Adjudication, and will be held 6 days before transfer to Circleville Juvenile Correctional Facility, and the Ohio Department of Youth Services will reduce the minimum period of institutionalization by that number of days.

(*Id.*); (*Id.*).

{¶7} On June 16, 2015, D.P. filed a motion for recalculation of confinement credit. (Case No. 2012 DEL 188, Doc. No. 246); (Case No. 2012 DEL 244, Doc. No. 73). In that motion, he argued that he should be credited under R.C. 2152.18(B) with an additional 353 days of confinement credit, consisting of 123 days spent at the West Central Juvenile Detention Center ("Detention Center") and 230 days spent at the Rehabilitation Center. (*Id.*); (*Id.*).

{¶8} On August 6, 2015, the trial court held a hearing concerning D.P.'s motion for recalculation of confinement credit. (Aug. 6, 2015 Tr. at 3). There, the State conceded that D.P. should be credited for the 123 days that he spent at the Detention Center, but it disagreed that he should be credited for the 230 days that he spent at the Rehabilitation Center. (*Id.* at 4). The trial court granted D.P.'s request for credit for the 123 days that he spent at the Detention Center and ordered further briefing as to the 230 days that he spent at the Rehabilitation Center. (*Id.* at 5-6). The trial court filed a judgment entry the next day reflecting its orders. (Case No. 2012 DEL 188, Doc. No. 253); (Case No. 2012 DEL 244, Doc. No. 77).

{¶9} On August 24, 2015, the State filed a response to D.P.'s motion for recalculation of confinement credit. (Case No. 2012 DEL 188, Doc. No. 255); (Case No. 2012 DEL 244, Doc. No. 79). On September 4, 2015, D.P. filed a "response to State's response" to D.P.'s motion for recalculation of confinement

credit. (Case No. 2012 DEL 188, Doc. No. 256); (Case No. 2012 DEL 244, Doc. No. 80).

{¶10} On September 9, 2015, the trial court filed a judgment entry denying D.P.'s request for confinement credit for the 230 days that he spent at the Rehabilitation Center. (Case No. 2012 DEL 188, Doc. No. 257); (Case No. 2012 DEL 244, Doc. No. 81). The trial court concluded that R.C. 2152.18(B)—which provides that a juvenile's minimum period of institutionalization be reduced by "the total number of days that the child has been confined in connection with the delinquent child complaint upon which the order of commitment is based"—is "overly broad, vague and therefore, unconstitutional." (*Id.*); (*Id.*). The trial court reasoned that the General Assembly did not define "confined," which, according to the trial court, carries a different meaning for juveniles. (*Id.*); (*Id.*). The trial court found unpersuasive *State v. Napier*, in which the Supreme Court of Ohio held that the defendant was entitled to credit toward prison time for days served at a community-based correctional facility because the defendant "was not free to come and go as he wished" and "was subject to the control of the staff regarding personal liberties." 93 Ohio St.3d 646, 648 (2001). In its analysis, the trial court stated:

> Napier [sic] is an adult case. Adults are treated differently than
> juveniles. Juveniles are not free to come and go from schools, are

not free to come and go from their house if detained by a parent. In every aspect of a child's life, they [sic] are not free to come and go as they please. Are the juvenile courts to give credit for any time a child is not free to come and go as they [sic] please?

(Case No. 2012 DEL 188, Doc. No. 257); (Case No. 2012 DEL 244, Doc. No. 81).

{¶11} D.P. filed notices of appeal in both cases—case Nos. 2012 DEL 188 and 2012 DEL 244—on October 6, 2015. (Case No. 2012 DEL 188, Doc. No. 259); (Case No. 2012 DEL 244, Doc. No. 83). We sua sponte consolidated the appeals on October 15, 2015. (Case No. 2012 DEL 188, Doc. No. 268); (Case No. 2012 DEL 244, Doc. No. 92). D.P. raises two assignments of error for our review, which we consider together.

**Assignment of Error No. I**

**The Auglaize County Juvenile Court erred when it determined that R.C. 2152.18(B) is overly broad, vague, and unconstitutional. (A-1; Sept. 9, 2015 Journal Entry – Orders on Credit 2012 DEL 188 & 2012 DEL 244, p.2).**

**Assignment of Error No. II**

**The juvenile court erred when it failed to grant D.P. credit for the time he was confined at the West Central Juvenile Rehabilitation Center relative to his offense, in violation of R.C. 2152.18(B); Fifth and Fourteenth Amendments to the U.S. Constitution; and, Article I, Section 16, Ohio Constitution. (A-1; Sept. 9, 2015 Journal Entry – Orders on Credit 2012 DEL 188 & 2012 DEL 244, p.2).**

{¶12} In his first assignment of error, D.P. argues that R.C. 2152.18(B) "is not vague, because it clearly delineates the situations in which a juvenile court must grant credit and in which credit will not be given." (Appellant's Brief at 5). D.P. points out that three appellate courts in Ohio have followed the Supreme Court of Ohio's definition of "confinement" set forth in *Napier*. D.P. makes similar arguments under his second assignment of error and asserts that the trial court erred by denying him credit for the time he spent at the Rehabilitation Center. In response to D.P.'s assignments of error, the State urges us to affirm the trial court's judgment, arguing, "The word 'confined' may not be vague in dealing with adults, but in consideration of the unique situation that juveniles are in, the word 'confined' becomes unconstitutionally broad and vague." (Appellee's Brief at 2).

{¶13} This court reviews for an abuse of discretion a trial court's determination on a motion for recalculation of confinement credit. *In re J.K.S.*, 8th Dist. Cuyahoga No. 101967, 2015-Ohio-1312, ¶ 8, citing *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, ¶ 8. An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} R.C. 2152.18(B) governs the credit to which a juvenile is entitled toward his or her institutionalization at DYS:

When a juvenile court commits a delinquent child to the custody of the department of youth services pursuant to this chapter, the court shall state in the order of commitment the total number of days that the child has been confined in connection with the delinquent child complaint upon which the order of commitment is based. The court shall not include days that the child has been under electronic monitoring or house arrest or days that the child has been confined in a halfway house. The department shall reduce the minimum period of institutionalization that was ordered by both the total number of days that the child has been so confined as stated by the court in the order of commitment and the total number of any additional days that the child has been confined subsequent to the order of commitment but prior to the transfer of physical custody of the child to the department.

See *In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5414, ¶ 11. "The term 'confined' is not defined in R.C. Chapter 2152." *Id.* at ¶ 13. However, "[u]nder the former version of the statute, a youth committed to a DYS facility could only receive credit for days the youth was held in 'detention.'" *Id.* at ¶ 9, citing former R.C. 2152.18(B). "The statute defined detention as 'the temporary care of children pending court adjudication or disposition, or execution of a court

order, in a public or private facility designed to physically restrict the movement and activities of children.'" *Id.*, quoting R.C. 2151.011(B)(14).

{¶15} As was the case in *In re D.P.*, the dispute in this appeal centers on the meaning of the term "confined." D.P. urges us to adopt the definition of "confinement" applied by the Supreme Court of Ohio in *Napier*. As D.P. points out, the Sixth District, First District, and Eighth District Courts of Appeals have—in juvenile cases—adopted the definition of "confinement" set forth in *Napier*. *See In re D.P.* at ¶ 18; *In re J.K.S.* at ¶ 12; *In re K.A.*, 6th Dist. Lucas No. L-12-1334, 2013-Ohio-3847, ¶ 5. The State argues that the trial court correctly concluded that the term "confined" is unconstitutionally vague as applied to juveniles.

{¶16} We disagree with the trial court and State and instead agree with D.P. and the First, Sixth, and Eighth Districts. The First District in *In re D.P.* summarized the nature of the Supreme Court of Ohio's holding in *Napier*:

> In *Napier*, the Ohio Supreme Court addressed whether time in a community-based corrections facility ("CBCF") should be credited against prison time under R.C. 2967.191 since inmates have much greater opportunities to leave the facilities than those confined in prison or jail. In that case, the defendant had pleaded guilty to felony drug possession and had been sentenced to three years of

community-control sanctions, including evaluation and treatment at a residential CBCF. [*Napier*, 93 Ohio St.3d] at 649. After the defendant had violated his community-control sanctions, the trial court imposed an eight-month prison sentence, and the defendant claimed he was entitled to credit for 110 days spent at the CBCF. The trial court granted the defendant credit for only 30 days at the facility when he had been in a "lockdown" status, and not permitted to leave the facility. *Id.* at 647.

The Supreme Court reversed the trial court's decision, holding that the defendant was entitled to credit for all the time he had spent at the facility. *Id.* at 648. In reaching this conclusion, the Supreme Court focused on its prior opinion in *State v. Snowder*, 87 Ohio St.3d 335, 720 N.E.2d 909 (1999), where, in considering whether a CBCF was "confinement," it had looked to the definition of a CBCF, which "must be a secure facility that contains lockups and other measures sufficient to ensure the safety of the surrounding community." *Napier* at 648. The Supreme Court looked at the exact qualities of the facility, as well as the specific nature of the defendant's experience at the facility as compared to the experience of the

defendant in *Snowder*, to determine whether he had been sufficiently restricted so as to constitute "confinement." *Id.*

The Supreme Court ruled that because a CBCF exercises effective control over the ability of the offender to leave the facility and the facility is secured in such a way to prevent offenders from entering the community without approval of the facility's managers, "all time served in a CBCF constitutes confinement for the purposes of R.C. 2967.191" even though the offender may be permitted to leave to participate in employment and other activities outside the CBCF. *Id.* at syllabus and 648.

*In re D.P.*, 2014-Ohio-5414, at ¶ 14-16.

{¶17} In adhering to the definition of "confinement" set forth in *Napier*, the First District concluded, "[W]e cannot agree with the state that juveniles are never entitled to credit for 'confinement' unless they are in a lockdown facility." *Id.* at ¶ 18. "Rather, juvenile courts must review the nature of the facility, to see if it is a secure facility with measures sufficient to ensure the safety of the surrounding community." *Id.*, citing *Napier* at 648. "They must also review the nature of the restrictions on the juvenile at the facility to determine if the juvenile was 'free to come and go as he wished' or if he was 'subject to the control of the staff

regarding personal liberties' as contemplated by *Napier*." *Id.*, quoting *Napier* at 648.

{¶18} In *In re K.A.*—the first case to apply *Napier*'s definition of "confinement" in the juvenile context—the Sixth District determined that by replacing the phrase "held in detention" with the word "confined," the General Assembly "broaden[ed] the circumstances under which a youth will receive credit against his or her term of institutionalization." *In re K.A.*, 2013-Ohio-3847, at ¶ 5. The Sixth District concluded that K.A. was entitled to credit for time he spent in treatment at "the Youth Treatment Center," "a community corrections facility." *Id.* at ¶ 1, 2, 23.

{¶19} In *In re J.K.S.*, the Eighth District cited *In re D.P.* and *In re K.A.* and concluded that the trial court abused its discretion in failing to credit J.K.S. with days he spent at a residential, "locked intensive treatment unit." *In re J.K.S.*, 2015-Ohio-1312, at ¶ 10-12. The Eighth District observed that in both that case and in *In re K.A.*, "juveniles were housed in secure residential facilities as a condition of community control and were later committed to the custody of a juvenile detention center after violating conditions of community control. The residential treatment facilities constituted confinement under the *Napier* standard." *Id.* at ¶ 12.

{¶20} We, too, adhere to the interpretation of "confinement" set forth in *Napier*. The Revised Code instructs, "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42. Reading in context the words and phrases of R.C. 2152.18(B), the definition of "confinement" from *Napier* is consistent with the use of "confined" in R.C. 2152.18(B). Black's Law Dictionary defines "confinement" as "[t]he act of imprisoning or restraining someone; the quality, state, or condition of being imprisoned or restrained." *Black's Law Dictionary* 362 (10th Ed.2014). Webster's Third New International Dictionary defines "confine" as "to hold within bounds," to "restrain from exceeding boundaries," and "to keep in narrow quarters." *Webster's Third New International Dictionary* 476 (2002). In *Napier*, the Court noted that the facility in that case was "'a secure facility that contains lockups and other measures sufficient to ensure the safety of the surrounding community.'" 93 Ohio St.3d at 647, quoting *State v. Snowder*, 87 Ohio St.3d 335, 337 (1999), quoting R.C. 2301.52(A)(1). The Court stated, "Napier was not free to come and go as he wished. He was subject to the control of the staff regarding personal liberties * * *." *Id.* at 648. In other words, Napier was restrained or held within bounds—namely, a secure facility.

**{¶21}** We recognize, as the trial court stated, that *Napier* "is an adult case" and that "[a]dults are treated differently than juveniles." (Case No. 2012 DEL 188, Doc. No. 257); (Case No. 2012 DEL 244, Doc. No. 81). We also recognize that the statute is arguably unartfully worded by not defining "confined" and by stating that a delinquent child receives credit for "days that the child has been *confined* in connection with the delinquent child complaint upon which the order of commitment is based," except, among others, "days that the child has been *confined* in a halfway house." (Emphasis added.) R.C. 2152.18(B).

**{¶22}** Nevertheless, just as in an adult case, a court can "'review the nature of the program to determine whether the restrictions on the participants are so stringent as to constitute 'confinement' as contemplated by the legislature.'" *State v. Bondurant*, 3d Dist. Marion No. 9-08-17, 2008-Ohio-5319, ¶ 13-15, quoting *State v. Osborn*, 3d Dist. Marion No. 9-05-35, 2006-Ohio-1890, ¶ 21 and citing *Napier*, 93 Ohio St.3d 646. In its judgment entry, the trial court stated, "In every aspect of a child's life, they [sic] are not free to come and go as they please. Are the juvenile courts to give credit for any time a child is not free to come and go as they [sic] please?" (Case No. 2012 DEL 188, Doc. No. 257); (Case No. 2012 DEL 244, Doc. No. 81). While a juvenile is subject to the rules of his or her household and school, some of which may be restrictive, these are not restrictions "'*so stringent* as to constitute 'confinement' as contemplated by the legislature.'"

(Emphasis added.) *Bondurant* at ¶ 15, quoting *Osborn* at ¶ 21. In other words, the restrictions a juvenile may experience at home or at school—even assuming those restrictions were imposed "in connection with the delinquent child complaint upon which the order of commitment is based"—are not the sort of stringent restrictions that amount to what it means to be "confined" under R.C. 2152.18(B). The secure facilities described in *Napier*, *In re K.A.*, and *In re J.K.S.*, for example, are a far cry from a home or a school. For the reasons above, we adopt to the interpretation of "confinement" set forth in *Napier*.

{¶23} The next issue is whether, under R.C. 2152.18(B), D.P. was "confined" at the Rehabilitation Center. *See In re D.P.*, 2014-Ohio-5414, at ¶ 18-19; *In re J.K.S.*, 2015-Ohio-1312, at ¶ 12. The trial court concluded,

> [T]he child presented no evidence as to the nature of the West Central Juvenile Rehabilitation Center as to whether it is a secured or unsecured facility. * * * The record is devoid of any evidence indicating the nature of West Central or presentation of evidence by the child as to the nature of his treatment at West Central.

(Case No. 2012 DEL 188, Doc. No. 257); (Case No. 2012 DEL 244, Doc. No. 81). However, in his memorandum in support of his motion for recalculation of confinement credit, D.P. directed the trial court to the DYS website containing information regarding the 12 community corrections facilities in the State of Ohio,

one of which is the Rehabilitation Center.  (Case No. 2012 DEL 188, Doc. No. 246, at 4); (Case No. 2012 DEL 244, Doc. No. 73, at 4).

**{¶24}** In addition, D.P. attached to his motion for recalculation of confinement credit an exhibit titled "West Central Juvenile Detention Center" and signed by Juvenile Probation Officer Lucas Kiefer.  (*Id.* at 3, Ex. G); (*Id.* at 3, Ex. G).  That exhibit lists dates that "[D.P.] was *held* in our facility."  (Emphasis added.)  (*Id.*); (*Id.*).  One of the timeframes listed is for "Rehab," during which D.P. was "[a]dmitted" on January 28, 2013 and "[r]eleased" on September 17, 2013 in connection with case Nos. 2012 DEL 188 and 2012 DEL 244.  (*Id.*); (*Id.*).

**{¶25}** Finally, the record reflects that D.P. received an 8-hour temporary-release pass on August 23, 2013, a 24-hour temporary-release pass from September 5 to 6, 2013, and temporary release for a funeral on September 13, 2013.[2]  (*Id.*); (*Id.*).  (*See also* Case No. 2012 DEL 188, Doc. Nos. 107, 109, 116).  In its entries ordering those temporary releases, the trial court stated, "The child is admonished that he is being released on TEMPORARY LEAVE and that any failure to return as ORDERED will be considered an escape and may be subject to

---

[2] The record contains orders for two other temporary releases, which neither D.P. nor the State acknowledges, during the time period when D.P. was held at the Rehabilitation Center.  On February 6, 2013, he received an 11-hour "furlough for the funeral of his grandmother."  (Case No. 2012 DEL 188, Doc. No. 55).  On July 19, 2013, D.P. received an 8-hour temporary-release pass.  (Case No. 2012 DEL 188, Doc. No. 100).  These dates are not reflected in the exhibit attached to D.P.'s motion for recalculation of confinement credit as dates on which D.P. was temporarily released from the Rehabilitation Center.  (*See* Case No. 2012 DEL 188, Doc. No. 246, Ex. G); (*See* Case No. 2012 DEL 244, Doc. No. 73, Ex. G).  The State does not dispute Exhibit G or D.P.'s assertion that D.P. was actually released from the Rehabilitation Center only on August 23, 2013, September 5-6, 2013, and September 13, 2013, notwithstanding the orders of the trial court authorizing his release on February 6, 2013 and July 19, 2013.

additional charges being filed against him." (Case No. 2012 DEL 188, Doc. Nos. 107, 109, 116). In each instance, D.P. was released into the custody of his father or mother. (*Id.*). During his August 23, 2013 and September 5-6, 2013 temporary releases, D.P. was placed on house arrest. (Case No. 2012 DEL 188, Doc. Nos. 107, 109).

**{¶26}** Based on these items in the record, we conclude that D.P. was "confined" at the Rehabilitation Center under R.C. 2152.18(B). We can glean from the record that the Rehabilitation Center is a secure facility with measures sufficient to ensure the safety of the surrounding community. (*See* Case No. 2012 DEL 188, Doc. No. 246, at 4); (*See* Case No. 2012 DEL 244, Doc. No. 73, at 4). The record reflects that the Rehabilitation Center is a "community corrections facility." R.C. 5139.01(14) provides:

> Unless the context requires a different meaning, "community corrections facility" means a county or multicounty rehabilitation center for felony delinquents who have been committed to the department of youth services and diverted from care and custody in an institution and placed in the rehabilitation center pursuant to division (E) of section 5139.36 of the Revised Code.

Ohio Adm.Code 5139-36-01(K) provides, "'Community Corrections Facility' means a facility * * * in which juveniles are committed by the court to participate in programs and services for a set period of time, established by the court, while under the *secure* care and supervision twenty-four hours a day." (Emphasis added.) Accordingly, we can conclude from the record that the Rehabilitation Center is a secure facility.

{¶27} We can also conclude from the record that D.P. was not free to come and go as he wished and was subject to the control of the staff regarding personal liberties. The record reflects that D.P. was "held" in the Rehabilitation Center. (*See* Case No. 2012 DEL 188, Doc. No. 246, Ex. G); (*See* Case No. 2012 DEL 244, Doc. No. 73, Ex. G). On the three occasions when D.P. was temporarily released from the Rehabilitation Center, an order from the court was required. (Case No. 2012 DEL 188, Doc. Nos. 107, 109, 116). During two of those temporary releases, D.P. was placed on house arrest. (Case No. 2012 DEL 188, Doc. Nos. 107, 109). Accordingly, the record reflects that D.P.'s personal liberties were subject to the control of the staff and that he was not free to come and go from the Rehabilitation Center as he wished.

{¶28} For these reasons, we conclude that D.P. was "confined" under R.C. 2152.18(B) for the 230 days that he was held at the Rehabilitation Center.[3] The trial court therefore abused its discretion by denying his request for confinement credit for the 230 days that he spent at the Rehabilitation Center.

{¶29} D.P.'s first and second assignments of error are sustained.

{¶30} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.

*Judgments Reversed and*
*Causes Remanded*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**

---

[3] A juvenile delinquent receives credit for "days that the child has been confined *in connection with* the delinquent child complaint upon which the order of commitment is based," subject to three exceptions. (Emphasis added.) R.C. 2152.18(B). *See also In re J.K.S.*, 2015-Ohio-1312, at ¶ 7, 13. The State does not argue alternatively that D.P.'s time at the Rehabilitation Center was not "in connection with the delinquent child complaint upon which the order of commitment is based." R.C. 2152.18(B). We nevertheless point out that, as was the case in *In re J.K.S.*, the trial court "ordered the suspended sentence into execution for the delinquency complaints that resulted in appellant's placement into" the Rehabilitation Center. 2015-Ohio-1312, at ¶ 13. Therefore, D.P.'s time at the Rehabilitation Center was "in connection with the delinquent child complaint upon which the order of commitment is based."