[Cite as *In re J.C.E.*, 2016-Ohio-7843.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: J.C.E., DELINQUENT CHILD. | : | **O P I N I O N** |
| | : | |
| | : | **CASE NO. 2016-G-0062** |
| | : | |
| | : | |

Appeal from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 15 JD 000205.

Judgment: Reversed and remanded.

*James R. Flaiz,* Geauga County Prosecutor, and *Melissa J. Lee,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Appellee-State of Ohio).

*Jay F. Crook,* Shryock, Crook & Associates, LLP, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Appellant-J.C.E.).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Adjudicated delinquent child, appellant, J.C.E., appeals the judgment of the Geauga County Court of Common Pleas, Juvenile Division, in which the court, in imposing appellant's previously-suspended placement in the Department of Youth Services ("DYS"), did not give appellant credit for the time he served in a community corrections facility ("CCF"). At issue is whether the trial court erred in not giving appellant such credit. For the reasons that follow, we reverse and remand.

{¶2} On June 8, 2015, appellant was charged in a nine-count complaint with four counts of burglary, two counts of petty theft, theft of drugs, criminal trespass, and possession of marijuana. Appellant pled not true.

{¶3} On June 18, 2015, appellant pled true to two counts of burglary and criminal trespass as charged in the complaint. The court committed appellant to DYS for a term consisting of a minimum of one year and a maximum of up to appellant turning 21 on the two burglary counts, each to be served consecutively to the other, for a period of a minimum of two years to a maximum of appellant turning 21. However, the court suspended appellant's commitment on the condition that he successfully complete a CCF program.

{¶4} On July 13, 2015, appellant was accepted into the Juvenile Residential Center of Northwest Ohio ("JRC"), a CCF facility. A "community corrections facility" is "a county or multicounty rehabilitation center for felony delinquents who have been committed to the department of youth services and diverted from care and custody in an institution and placed in the rehabilitation center." R.C. 5139.01(A)(14).

{¶5} On February 5, 2016, the court's Intake Officer filed a motion to impose suspended detention/DYS placement. On February 9, 2016, the court held an impose hearing, at which appellant stipulated he had failed to successfully complete the CCF program as ordered by the court. At that hearing, the court placed appellant into DYS to serve his previously-suspended commitment of two years on the minimum side to the age of 21 on the maximum, "subject to whatever credit is dually due [him] under Ohio law." On February 12, 2016, the court entered judgment confirming the terms of its commitment, but added that, pursuant to *In re Thomas*, 100 Ohio St.3d 89, 2003-Ohio-

2

5162, appellant was given no credit for the time served at JRC. However, the court gave appellant credit for 40 days of placement in the Portage-Geauga Juvenile Detention Center. On February 19, 2016, the court entered a nunc pro tunc judgment in which it repeated the provisions of its February 12, 2016 entry.

{¶6} Appellant appeals the court's judgment, asserting the following for his sole assignment of error:

{¶7} "The trial court committed [reversible] error in denying J.C.E.'s requested credit for the time served at a C.C.F. based upon the holding of *In re Thomas* (2003), 100 Ohio St.3d 89."

{¶8} As a preliminary matter, the state argues we should apply the plain error standard of review because appellant never objected to the calculation of his confinement credit at the impose hearing or after the hearing. However, at the impose hearing, the court stated that appellant's placement in DYS was "subject to whatever credit is dually due [him] under Ohio law." Thus, appellant had no reason to believe he was not going to be given credit for his time served at JRC and he was not on notice that the court was not going to give him credit for that period. Thus, there was no reason for appellant to object at the hearing. Further, once the court expressly stated in its February 12, 2016 judgment entry that appellant was not given such credit, that was a final judgment, and it would have been too late to object. Hence, appellant did not waive the issue and the plain error standard does not apply.

{¶9} Generally, an appellate court reviews the trial court's calculation of confinement credit for an abuse of discretion. *In re J.K.S.*, 8th Dist. Cuyahoga Nos. 101967 and 101968, 2015-Ohio-1312, ¶8, citing *In re. H.V.*, 138 Ohio St.3d 408, 2014-

3

Ohio-812, ¶8.  However, where the facts are not in dispute and the appellate court is thus faced with the purely legal question of whether the juvenile court correctly applied the law to the facts in determining whether time spent at a CFF constitutes "confinement," such question is a matter of law that we review de novo. *In re T.W.*, 1st Dist. Hamilton No. C-150327, 2016-Ohio-3131, ¶4.  Thus, we review de novo the issue of whether appellant was entitled to credit against his DYS commitment for his stay at JRC.

{¶10}  Appellant argues the trial court erred in denying him credit for the time he served at JRC.  In support, he argues the trial court based its decision on *In re Thomas*, *supra,* which has since been effectively superseded by statute.

{¶11}  Former R.C. 2152.18(B), regarding credit for time served for juveniles, provided in pertinent part:

> {¶12}  When a juvenile court commits a delinquent child to the custody of the department of youth services, * * * the court shall state in the order of commitment the total number of days that the child has been held, as of the date of the issuance of the order, in *detention* in connection with the delinquent child complaint upon which the order of commitment is based. The department shall reduce the minimum period of institutionalization * * * by both the total number of days that the child has been so held in *detention* as stated by the court in the order of commitment and the total number of any additional days that the child has been held in *detention* subsequent to the order of commitment but prior to the transfer of physical custody of the child to the department.  (Emphasis added.)

{¶13}  In *In re Thomas, supra*, decided in 2003, the Supreme Court of Ohio considered a case in which two juveniles sought credit for the time spent at a rehabilitation and treatment center before their commitment to DYS.  In construing the former version of R.C. 2152.18(B), the Supreme Court in *In re Thomas* held:

4

{¶14} The threshold issue is whether the children here were in "detention," as that term is used in [former R.C. 2152.18(B)], before their placement at DYS. R.C. 2151.011(B)(14) * * * defines "detention" as "the temporary care of children pending court adjudication or disposition * * * in a public or private facility designed to physically restrict the movement and activities of children." While appellants argue that the control exercised over them at the treatment and rehabilitation facilities constituted detention under the definition in R.C. 2151.011(B)(13), we disagree. The nature of the facility and the amount of control it exercises over its inhabitants are not the sole determinants of whether "detention" has occurred. Instead, the key here is the word "pending." Read together, [former R.C. 2152.18(B)] and 2151.011(B)(14) grant credit *only for the days that a juvenile is restricted to a facility pending adjudication or disposition of the delinquency complaint * * *.* (Emphasis added.) *In re Thomas, supra*, at ¶12.

{¶15} Thus, under the former version of [R.C. 2152.18(B)], a youth committed to a DYS facility could only receive credit for days the youth was held in "detention." Further, R.C. 2151.011(B)(14) defines detention as "the temporary care of children pending court adjudication or disposition of the delinquency complaint * * * in a public or private facility designed to physically restrict the movement and activities of children." As a result, a juvenile could only be given credit for time spent in the temporary care of a facility designed to restrict the movement of children *pending court adjudication or disposition of the delinquency complaint.*

{¶16} In 2012, the language in R.C. 2152.18(B) was amended to remove the phrase "held in detention," and to replace it with the word "confined." The revision broadened the credit to which a juvenile is entitled toward his institutionalization at DYS by making entitlement to credit dependent on whether the juvenile was simply *confined in connection with his complaint*, as opposed to being in detention and thus *restricted to*

5

*a facility pending adjudication or disposition of the delinquency complaint.* Current R.C. 2152.18(B) provides as follows (the revisions are italicized):

{¶17} When a juvenile court commits a delinquent child to the custody of the department of youth services * * *, the court shall state in the order of commitment the total number of days that the child has been *confined* in connection with the delinquent child complaint upon which the order of commitment is based. *The court shall not include days that the child has been under electronic monitoring or house arrest or days that the child has been confined in a halfway house.* The department shall reduce the minimum period of institutionalization that was ordered by both the total number of days that the child has been so *confined* as stated by the court in the order of commitment and the total number of any additional days that the child has been *confined* subsequent to the order of commitment but prior to the transfer of physical custody of the child to the department. (Emphasis added.)

{¶18} Thus, under the current version of R.C. 2152.18(B), whether a child is entitled to credit for time served is no longer dependent on whether the child was detained pending court adjudication or disposition of the delinquency complaint, but, rather, whether the time spent in a CCF qualifies as confinement. While R.C. Chapter 2152 does not define "confinement," R.C. 2152.18(B) provides some examples of what is not confinement: electronic monitoring, house arrest, or time spent in a halfway house.

{¶19} The dispute in this appeal centers on the meaning of the term "confinement." Appellant argues this court should not follow the definition adopted by *In re Thomas* because the statutory definition of "detention" relied on in *In re Thomas* is no longer relevant in determining credit for time served because R.C. 2152.18(B) no longer defines credit for time served in terms of detention. Rather, appellant argues this court, like other Ohio Appellate Districts, in determining such credit, should follow the

6

interpretation of "confinement" announced by the Supreme Court of Ohio in *State v. Napier*, 93 Ohio St.3d 646 (2001).

{¶20} In the adult criminal context, the Supreme Court of Ohio in *Napier* held that entry into a community-based corrections facility ("CBCF") (the adult counterpart of a CCF) constitutes confinement. *Napier* at 647.

{¶21} In *Napier*, the Ohio Supreme Court addressed whether time spent in a CBCF should be credited against prison time under R.C. 2967.191 since inmates have more opportunity to leave the facility than those confined in prison. In *Napier*, the defendant had pled guilty to felony drug possession and had been sentenced to three years of community-control sanctions, including treatment at a residential CBCF. After the defendant had violated his community-control sanctions, the trial court imposed an eight-month prison sentence, and the defendant claimed he was entitled to credit for 110 days spent at the CBCF. The trial court granted the defendant credit for only 30 days at the facility when he had been in "lockdown," and not permitted to leave the facility.

{¶22} The Supreme Court in *Napier* reversed the trial court's decision, holding that the *defendant was entitled to credit for all the time he had spent at the facility*. *Id.* at 648. In reaching this conclusion, the Supreme Court, in considering whether admission to a CBCF was "confinement," looked to the definition of a CBCF, which "must be a secure facility that contains lockups and other measures sufficient to ensure the safety of the surrounding community." *Napier* at 648. The Supreme Court looked at the qualities of the facility, as well as the specific nature of the defendant's experience at

7

the facility to determine whether he had been sufficiently restricted so as to constitute "confinement." *Id.*

{¶23} Thus, in *Napier*, the Supreme Court held that because a CBCF (1) is secured in such a way to prevent offenders from entering the community without approval of the facility's managers, and (2) the facility exercises control over the ability of the offender to leave the facility, all time served in a CBCF constitutes confinement for purposes of credit for time served for adults, even though the offender may be permitted to leave to participate in employment and other activities outside the CBCF. *Id.* at 648.

{¶24} Following the Supreme Court's decision in *Napier*, the First, Third, Sixth, and Eighth Appellate Districts have adopted the interpretation of "confinement" set forth in *Napier* and applied it in the juvenile context. *In re D.P.,* 1st Dist. Hamilton No. C-140158*,* 2014-Ohio-5414, ¶18 (First District); *In re D.P.*, 3d Dist. Auglaize Nos. 2-15-13 and 2-15-14, 2016-Ohio-747, ¶20; *In re K.A.*, 6th Dist. Lucas No. L-12-1334, 2013-Ohio-3847, ¶5; *In re J.K.S., supra*, at ¶12 (Eighth District).

{¶25} In *In re K.A, supra,* the first case to apply *Napier'*s interpretation of "confinement" in the juvenile context, the Sixth District held that by replacing the phrase "held in detention" with the word "confined," the General Assembly "*broaden[ed] the circumstances under which a youth will receive credit against his or her term of institutionalization.*" (Emphasis added.) *In re K.A.,* at ¶5. The Sixth District held that K.A. was entitled to credit for the time he spent in treatment at the Youth Treatment Center, a CCF. *Id.* at ¶1, 2, 23.

{¶26} In *In re J.K.S., supra,* the Eighth District cited *In re D.P.,* 2014-Ohio-5414, and *In re K.A., supra,* in holding that the trial court abused its discretion in failing to credit J.K.S. with days he spent at a residential, "locked intensive treatment unit." *In re J.K.S., supra,* at ¶10-12. The Eighth District noted that in both *In re J.K.S.* and *In re K.A., supra,* "juveniles were housed in secure residential facilities as a condition of community control and were later committed to the custody of a juvenile detention center after violating conditions of community control. The residential treatment facilities constituted confinement under the *Napier* standard." *In re J.K.S., supra,* at ¶12. The Eighth District stated: "A plain reading of R.C. 2152.18(B) indicates the court should give credit for any time the juvenile 'has been confined in connection with the delinquent child complaint upon which the order of commitment is based.'" *In re J.K.S., supra,* at ¶13.

{¶27} Most recently, the Third District in *In re D.P.*, 2016-Ohio-747, adopted the interpretation of "confinement" set forth in *Napier* and held that the juvenile's time spent in a CCF constituted "confinement" under *Napier.* In doing so, the Third District stated:

{¶28} We recognize * * * that *Napier* "is an adult case" and that "[a]dults are treated differently than juveniles." * * * We also recognize that the statute is arguably unartfully worded by not defining "confined" and by stating that a delinquent child receives credit for "days that the child has been confined in connection with the delinquent child complaint upon which the order of commitment is based," except, among others, "days that the child has been confined in a halfway house." (Emphasis omitted.) R.C. 2152.18(B).

{¶29} Nevertheless, just as in an adult case, a court can "'review the nature of the program to determine whether the restrictions on the participants are so stringent as to constitute 'confinement' as contemplated by the legislature.'" *State v. Bondurant*, 3d Dist. Marion No. 9-08-17, 2008-Ohio-5319, ¶13-15, quoting *State v. Osborn*, 3d Dist. Marion No. 9-05-35, 2006-Ohio-1890, ¶21 and citing *Napier, supra.*" In its judgment entry, the trial court stated, "In every aspect of

9

a child's life, they [sic] are not free to come and go as they please. Are the juvenile courts to give credit for any time a child is not free to come and go as they [sic] please? * * * While a juvenile is subject to the rules of his or her household and school, some of which may be restrictive, these are not restrictions "'so stringent as to constitute 'confinement' as contemplated by the legislature.'" (Emphasis omitted.) *Bondurant* at ¶15, quoting *Osborn* at ¶21. In other words, the restrictions a juvenile may experience at home or at school * * * are not the sort of stringent restrictions that amount to what it means to be "confined" under R.C. 2152.18(B). The secure facilities described in *Napier, In re K.A., and In re J.K.S.*, for example, are a far cry from a home or a school. For the reasons above, we adopt the interpretation of "confinement" set forth in *Napier. In re D.P.*, 2016-Ohio-747, at ¶21-22 (Third District).

{¶30} In light of the Third District's recent adoption of the *Napier* standard in 2016 in *In re D.P.*, 2016-Ohio-747, the state's argument that the Third District continues to rely on *In re Thomas* is inaccurate and confusing. In support, the state relies on *In re N.G.*, 3d Dist. Hancock No. 5-13-35, 2014-Ohio-3190, decided by the Third District two years *before* it decided *In re D.P.*, 2016-Ohio-747. In any event, the Third District in *In re N.G.* expressly stated that the issue of whether a juvenile is entitled to credit for time served at a CCF toward his DYS commitment was *not* before the court. *Id.* at ¶11. Rather, the court in *In re N.G.* cited *Thomas* to support its holding that "time spent in a CCF was distinct from the DYS commitment" and "does not equate to being admitted to a DYS facility." *Id.* Thus, despite the Third District's earlier decision in *In re N.G.*, the Third District in *In re D.P.*, 2016-Ohio-747, adopted *Napier*'s interpretation of "confinement."

{¶31} Thus, *all four Ohio Appellate Districts* that have addressed the issue, including the Third, have adopted *Napier*'s interpretation of "confinement." We agree with the holdings of our fellow Districts and likewise adopt the interpretation of the term "confinement" as set forth in *Napier, supra.*

**{¶32}** The state attempts to distinguish *Napier* by arguing CCFs are not analogous to CBCFs (for adult criminals) because, unlike CBCFs, CCFs are not secure facilities. However, this is not true. Ohio Adm.Code 5139-36-01(K) provides, "'Community Corrections Facility' means a facility * * * in which juveniles are committed by the court to participate in programs and services for a set period of time, established by the court, while *under the secure care and supervision twenty-four hours a day.*" (Emphasis added.)

**{¶33}** The state argues that a CCF is part of DYS so that when appellant was placed in JRC, he was in DYS' custody and not entitled to any additional credit. Significantly, the state does not cite any authority in support of this argument. Moreover, this argument is defeated by *In re N.G.*, supra, in which the Third District held that time spent in a CCF is distinct from the DYS commitment. *Id.* at ¶11. Thus, the time spent in a CCF may be counted against the juvenile's time in DYS.

**{¶34}** Further, the state's efforts to distinguish two of the foregoing appellate cases that adopted *Napier* are unavailing. Appellant argues that the First District's holding in *In re D.P.* 2014-Ohio-5414, is inapposite because the time spent by D.P. in the CCF in that case was *prior to* the order committing the child to DYS, while appellant's stay at JRC occurred after the commitment in DYS. However, this is irrelevant because, according to the current version of R.C. 2152.18(B), credit for time served is based on the time the juvenile is *confined in connection with the delinquent child complaint*, not whether the placement in CFF is before or after the commitment to DYS. Further, R.C. 2152.18(B) provides a juvenile is entitled to credit for the time he is

11

confined before the order of commitment and after the order, but before transfer of physical custody to DYS.

{¶35} In addition, appellant's attempt to distinguish *In re T.W., supra*, from the instant case based on the fact that the CCF in *In re T.W.* was a different CCF than the one involved in the present case (JRC) is unavailing because both treatment facilities were CCFs and appellant has failed to cite any evidence in the record demonstrating that the security procedures in the CCF involved in *In re T.W.* are different from those in place at JRC.

{¶36} The state also argues that this court should continue to apply *Thomas,* although the statute on which it is based has been effectively superseded by amendment, because children should not be treated as adults and in fact are entitled to more protections. However, this argument is disingenuous because, under the prior version of R.C. 2152.18(B) and *Thomas*, children were given less rights than adults as children were not given credit for their stay at treatment centers, while adult criminals under *Napier* were given such credit for their stays in CBCFs. It appears that the whole point of current R.C. 2152.18(B) and those appellate cases adopting the definition of "confinement" in *Napier* was to give children the same credit for time served in treatment facilities that adult criminals enjoy.

{¶37} Further, we must consider whether appellant was in confinement for purposes of R.C. 2152.18(B). Appellant argues that on remand, this court should order the trial court to credit appellant for all time served at JRC. In contrast, the state argues that if we decide to adopt *Napier* instead of *Thomas*, we should remand for the trial court to determine whether appellant's stay at JRC constituted confinement pursuant to

12

the standard set forth in *Napier*.   We agree with the state's argument; however, based on the authority cited below, we do not agree with the state's further argument that on remand, appellant "must show he was in a locked facility, with gates, that was monitored at all times."   Moreover, as discussed below, the fact that appellant was permitted off-site family visits beginning in October 2015 is not determinative of whether he was "confined" at JRC.

{¶38} In applying *Napier* in an adult context, this court in *Drummond v. Wilson*, 11th Dist. Trumbull No. 2002-T-0128, 2002-Ohio-5366, citing *State v. Edwards*, 9th Dist. Summit No. 20840, 2002 Ohio App. LEXIS 1940 (Apr. 24, 2002), stated:

> {¶39} [A] criminal defendant is entitled to credit under the *Napier* syllabus for "all time served" in a treatment facility only when it is shown that: (1) the facility is a community-based correctional facility under R.C. 2301.52(A); and (2) the restraint on the defendant's liberties rose to the same level of restraint which the *Napier* defendant had to endure. *The Edwards court further concluded that the defendant had the burden of proving that the extent of the restraint rose to the Napier level.*  (Emphasis added.)  *Drummond, supra,* at ¶12.

{¶40} Further, the First District in *In re D.P.*, 2014-Ohio-5414, stated:

> {¶41} [W]e cannot agree with the state that juveniles are never entitled to credit for "confinement" unless they are in a lockdown facility. Rather, juvenile courts must review the nature of the facility, to see if it is a secure facility with measures sufficient to ensure the safety of the surrounding community. *Napier* at 648. They must also review the nature of the restrictions on the juvenile at the facility to determine if the juvenile was "free to come and go as he wished" or if he was 'subject to the control of the staff regarding personal liberties' as contemplated by *Napier*.  *In re D.P.*, 2014-Ohio-5414, ¶18.

{¶42} Based on our review of the record, we are unable to determine whether appellant's time at JRC constitutes confinement for purposes of R.C. 2152.18(B). Appellant has not referenced any evidence in the record related to the nature of JRC or

the conditions affecting appellant's personal liberties during his time there. While the trial court stated on the record that community correction facilities "are facilities that you are locked up in a secured facility, you sleep in a locked room like a cell-type room," the court did not make any findings relative to the nature of JRC or appellant's time there.

{¶43} The following remand instructions of the First District in *In re D.P.*, 2014-Ohio-5414, are pertinent:

> {¶44} Without further evidence as to the nature of Hillcrest and the nature of the staff's control regarding D.P.'s personal liberties, we are unable to determine the severity of the restrictions placed upon D.P.'s freedom and, thus, we cannot conduct a meaningful review of whether D.P. was "confined" as that term has been defined by the Supreme Court in *Napier* so as to be entitled to credit for time spent at Hillcrest School. *See State v. Ventra*, 11th Dist. Geauga No. 2010-G-2968, 2011-Ohio-156, ¶ 19-20. We, therefore, sustain D.P.'s assignment of error to the extent that the record does not contain enough evidence to support the trial court's judgment, and the cause must be remanded so that the record can be developed as to the nature of the Hillcrest School and the staff's control regarding D.P's personal liberties. *In re D.P.*, 2014-Ohio-5414, at ¶20.

{¶45} We therefore hold the trial court erred in denying appellant credit for his stay at JRC pursuant to *In re Thomas, supra.* Since the Supreme Court's interpretation of credit for time served by juvenile offenders in *In re Thomas* was based on a statute that has since been amended, *In re Thomas* is no longer controlling and has been superseded by R.C. 2152.18(B), as amended in 2012.

{¶46} This matter is remanded for the trial court to take evidence and make findings concerning the nature of JRC's security procedures and the staff's control regarding appellant's personal liberties. The trial court shall also determine whether appellant was "confined" pursuant to R.C. 2152.18(B), as that term is interpreted by the

Ohio Supreme Court in *Napier, supra,* and, if so, the number of days appellant was confined.

{¶47} In determining whether appellant was "confined" at JRC for purposes of determining credit for time served, the trial court shall consider whether JRC is a secure facility that contains lockups and other measures to ensure the safety of the surrounding community; whether juveniles are secured there in such a way as to prevent them from entering the community without the approval of JRC's managers; and whether the juveniles housed at JRC are under secure care and supervision. The court shall also consider the nature of the restrictions on appellant to determine if he was free to come and go as he wished or if he was subject to the control of the staff regarding his personal liberties as contemplated by *Napier*.

{¶48} The state argues the fact that appellant was allowed off-ground visits makes his stay at JRC seem less "confining." The record reflects that on October 8, 2015, the trial court granted JRC's request to allow appellant to have off-ground visits with his family, the length of such visits to be determined by JRC and the Geauga County Juvenile Probation Department. The court ordered that a parent of appellant shall remain with him at all times during the off-ground visit and report any rule violations by appellant to JRC staff immediately, and that failure to do so may result in further charges against appellant and/or his parent. Thus, appellant's off-ground visits were subject to court order. In *Napier, supra*, the Ohio Supreme Court held that the time served in a CBCF constitutes "confinement," even though the offender may be permitted to leave to participate in employment and other activities outside the CBCF. Moreover, in *In re D.P.*, 2016-Ohio-747, the Third District held that temporary releases

15

for such activities as a funeral pursuant to court order amounted to confinement. *Id.* at ¶27. On remand, the trial court shall also determine whether appellant's off-grounds visits constituted confinement.

{¶49} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is reversed, and this matter is remanded to the trial court for further proceedings consistent with the opinion.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.