[Cite as *In re T.W.*, 2016-Ohio-3131.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  T.W.  :  APPEAL NO.  C-150327
TRIAL NO.  13-7225z

:  *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 25, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for appellant State of Ohio,

*Timothy Young*, Ohio Public Defender, and *Charlyn Bohland*, Assistant State Public Defender, for appellee T.W.

Please note:  this case has been removed from the accelerated calendar.

**STAUTBERG, Judge.**

{¶1}   In this case, the state appeals the trial court's judgment ordering confinement credit on T.W.'s commitment to the Department of Youth Services ("DYS") for time T.W. spent at Hillcrest School ("Hillcrest"), a children's residential center.  We affirm the judgment of the trial court.

{¶2}   T.W. admitted to engaging in conduct that, had he been an adult, would have constituted the crime of aggravated assault with a firearm specification. After accepting T.W.'s plea, the trial court imposed a DYS commitment, suspended it, and ordered T.W. to attend Hillcrest as a condition of probation.  After T.W. repeatedly violated the rules at Hillcrest, the trial court revoked T.W.'s probation and imposed the suspended DYS commitment.  It ordered the 207 days that T.W. had spent in Hillcrest to be credited to T.W.'s DYS commitment.

{¶3}   The state now appeals. In a single assignment of error it contends that T.W. was not entitled to have his DYS commitment reduced by the days that he spent in Hillcrest because T.W. was not "confined" as contemplated by R.C. 2152.18(B).

{¶4}   The facts in this case are not in dispute.  We are therefore faced with the purely legal question of whether the trial court correctly applied the facts to the law in determining that time spent at Hillcrest constitutes "confinement."  Questions of law are reviewed de novo.  *State v. Lamke*, 1st Dist. Hamilton No. C-110725, 2013-Ohio-925, ¶ 8, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8, and *Dikong v. Ohio Supports, Inc.*, 2013-Ohio-33, 985 N.E.2d 949, ¶ 16 (1st Dist.).

## Confinement Credit

{¶5}   When a juvenile court commits a juvenile to DYS, it is required to "state in the order of commitment the total number of days that the child has been

confined in connection with the delinquent child complaint upon which the order of commitment is based." R.C. 2152.18(B). DYS, in turn, "shall reduce the minimum period of institutionalization that was ordered by * * * the total number of days that the child has been so confined as stated by the court in the order of commitment * * * ." *Id.*

{¶6} We have previously considered the question of how to determine whether a juvenile has been "confined" as contemplated by R.C. 2152.18(B). In *In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5414, we did not have a sufficient record to determine whether the youth was "confined" at Hillcrest, but we established guidelines to consider in making such a determination. We ruled that a juvenile court "must review the nature of the facility, to see if it is a secure facility with measures sufficient to ensure the safety of the surrounding community." *Id.* at ¶ 18, citing *State v. Napier*, 93 Ohio St.3d 646, 648, 758 N.E.2d 1127 (2001). The juvenile court "must also review the nature of the restrictions on the juvenile at the facility to determine if the juvenile was 'free to come and go as he wished' or if he was 'subject to the control of the staff regarding personal liberties' * * * ." *Id.*, quoting *Napier*.

### Hillcrest

{¶7} Hillcrest is a children's residential center. The 80-acre campus includes a school, a cafeteria, a weight room, a gymnasium, an administrative building, and residential cottages. Children at Hillcrest are monitored by staff 24 hours a day, every day. There are 111 cameras at the facility. The Hillcrest juveniles have a highly regimented day which includes attending school, physical education courses, treatment groups, and vocational classes. Staff members escort the children to and from each activity. The youth may not use the bathroom or get a drink of

3

water without permission. If the children are taking part in an organized activity such as playing football, staff is positioned so that the youth are always in a staff member's line of sight. If the children are in the gymnasium, staff members are positioned at each door. The juveniles are subject to bed checks every 15 minutes throughout the night.

{¶8} The youth do not have unfettered access to their residential cottages. Staff members must use a key card to open the cottage doors. For safety reasons, the cottage doors open from the inside after a ten-second delay, but an alarm sounds if a youth exits from his or her cottage without permission. When the children are inside the cottages, they are supervised and they must ask permission to go to the bathroom or to go into their rooms. The youth are not allowed to be in each other's rooms.

{¶9} It is possible for juveniles to walk off of Hillcrest property because the campus is not fenced. However, there are consequences for children who leave Hillcrest without permission. Staff will intervene to keep a child on campus, and will use physical restraint if necessary to keep the child from leaving. If a child does leave campus without permission, staff contacts local police to assist in bringing the child back. Further, a probation violation or a violation of court order charge is filed, and a warrant issues, subjecting the child to arrest.

{¶10} Children sometimes leave the Hillcrest campus for various activities and outings. Every off-campus activity is staff-supervised. The juveniles are not allowed to be anywhere without supervision during these trips.

{¶11} The juveniles at Hillcrest can earn weekend passes home. While at home, the child is monitored by his or her parent or legal custodian. Should a juvenile fail to return to Hillcrest after a home visit, that juvenile will be charged with a violation of a court order, and a warrant will issue for the child's arrest.

## Time Spent at Hillcrest is "Confinement"

{¶12} The state essentially contends that because Hillcrest is not an enclosed, locked facility, and because the children are allowed weekend passes home, the children at Hillcrest are not "confined" as contemplated by R.C. 2152.18(B). Based on the standard this court set forth in *In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5414, we hold that the trial court correctly concluded that time spent at Hillcrest qualifies as "confinement" for purposes of determining confinement credit under R.C. 2152.18(B).

{¶13} First, there are measures in place to ensure the safety of the surrounding community. The presence or absence of a fence is not dispositive of this factor. The youths are not free to leave the grounds without permission. While the youths may have the ability to walk or run away, staff members will attempt to physically stop any juvenile trying to leave. If a youth does leave the grounds without permission, the police are contacted, a charge is filed, and a warrant is issued for the child's arrest. There are similar consequences for a child who does not return to Hillcrest after a weekend pass home.

{¶14} Second, the children at Hillcrest are subject to the control of the staff regarding their personal liberties. They may not move freely about the Hillcrest campus, and are escorted to and from every activity. They do not have access to their cottages without staff assistance. If a juvenile attempts to leave his or her cottage without permission, an alarm sounds. The youths may not have other juveniles in their rooms. The juveniles cannot use the restroom or get a drink of water without permission. The children are monitored 24 hours a day, every day. There are 111 cameras on the campus. Further, weekend passes home must be earned. Time at home is not at the discretion of the child.

**{¶15}** Accordingly, we hold that juveniles at Hillcrest are "confined" for purposes of calculating confinement credit under R.C. 2151.18(B). The trial court therefore did not err by ordering T.W.'s DYS commitment to be reduced by the 207 days that T.W. was in Hillcrest.

**{¶16}** The state next contends that the trial court erred because juveniles are not entitled to credit for time spent at a residential center while on probation. The state failed to raise this argument in the trial court and it is therefore forfeited absent a claim of plain error. *See State v. Comen*, 50 Ohio St.3d 206, 211, 533 N.E.2d 640 (1990). No such claim was made.

**{¶17}** The state's sole assignment of error is overruled.

### Conclusion

**{¶18}** The trial court's judgment ordering 207 days of confinement credit is affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.**, concurs.
**MOCK, J.**, dissents.

**MOCK, J.,** dissenting**.**

**{¶19}** I do not believe that this court has articulated an appropriate standard for determining when a juvenile is "confined" as that term is used in R.C. 2152.18(B). Alternately, the record does not support the conclusion that T.W. was confined while attending the program at Hillcrest under the majority's test. For these reasons, I respectfully dissent.

**{¶20}** As the majority noted, the section of the Revised Code that controls the award of credit for juveniles has been changed. *See In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5415, ¶ 11. R.C. 2152.18(B), as it applies in this case, states

that the court shall state in the order of commitment the total number of days that the child has been **confined** in connection with the delinquent child complaint upon which the order of commitment is based. The court shall not include days that the child has been under **electronic monitoring** or **house arrest** or days that the child has been **confined in a halfway house**.

(Emphasis added.)

{¶21} The way the statute reads, the award of credit by the trial court is determined by a two-part test. First, the trial court must determine whether the child was "confined." If the child was confined, the next step is to determine whether that confinement occurred while under electronic monitoring, house arrest, or while confined in a halfway house. The language makes clear that such conditions would otherwise be considered confinement, because there would be no other reason to specifically list them as exceptions. If the child was confined and was not confined in any of those excepted institutions, he or she received credit for his or her confinement.

{¶22} Following our decision in *In re D.P.*, the majority begins with the premise that "confinement" has the same meaning in R.C. 2152.18(B) as it does in the adult system as articulated in cases like *State v. Napier*, 93 Ohio St.3d 646, 758 N.E.2d 1127 (2001). *See* the majority opinion at ¶ 6, citing *In re D.P.* at ¶ 18. In *In re D.P.*, this court constructed a definition of confinement that includes time in a facility "with measures sufficient to ensure the safety of the surrounding community," and with safeguards such that the juvenile was not "free to come and go as he wished" and was "subject to the control of the staff regarding personal liberties." *In re D.P.* at ¶ 18, citing *Napier* at 648.

{¶23} The problem with this test is that adults and juveniles are not similarly situated. The main thrust of the majority's analysis is that T.W. was not "free to come and go as he wished" and was "subject to the control of the staff regarding personal liberties." But NO child is free to come and go as they wish. Any institution acting in loco parentis would be required to prevent a child in its care from wandering off the premises. Even a child who simply attends school every day is not free to walk away from the school grounds. If the child was to attempt to leave, teachers or staff would prevent him from doing so. If he did leave the grounds, schools are empowered to either contact local authorities or to hire attendance officers who would take the child into custody and "conduct such youth to the school he has been attending or should rightfully attend." *See* R.C. 3321.17.

{¶24} On the other hand, adults are generally free to come and go as they choose. If a trial court orders an adult to obtain his or her G.E.D., receive substance-abuse counseling, vocational training, or any of the many possible conditions of community control, no staff member of those programs will physically prevent that adult from getting up and walking out of the building. The police will not be immediately contacted. So, when those conditions do exist for an individual in the adult system, they are a noteworthy restriction of that individual's liberty. But with children, such restrictions are the norm based only on the fact that they are children.

{¶25} The ideal solution would be to have the General Assembly revisit the legislation and, at the conclusion of its fact-finding process, expand on the statute in order to list specifically which institutions would qualify as confinement under the statute. That is the body best suited to weigh the public- policy factors and adapt legislation to meet those considerations. *See Arbino v. Johnson & Johnson*, 116 Ohio

St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 127 (the General Assembly establishes the laws and public policies of the state).

{¶26} Alternately, I believe that any version of the definition of "confinement" must encompass *actual* and *effective* physical restraint within a secure facility. *See In re D.P.*, 3d Dist. Auglaize Nos. 2-15-13 and 2-15-14, 2016-Ohio-747, ¶ 20 (citing various dictionary definitions of "confinement" to mean "the act of imprisoning or restraining someone," "to hold within bounds," "to restrain from exceeding boundaries," "to keep in narrow quarters"). Without such additional criteria, our definition of "confinement" would encompass almost every activity a juvenile might be ordered to undergo as part of his community control.

{¶27} But even applying the standard articulated by the majority, I would not find that T.W.'s stay in Hillcrest constituted confinement. First, I would not find that the facility implemented "measures sufficient to ensure the safety of the surrounding community." The complex itself looks more like a college campus than a juvenile corrections facility. The facility is not fenced in and the only gate on the property is on the main driveway. But that gate is open throughout the day and is not attached to any kind of wall. So, even if the gate were closed, a child would simply have to walk around it in order to leave. There is nothing preventing a child from leaving campus other than the attempts of staff to do so. There is also nothing to prevent outside persons from coming onto the property.

{¶28} And when children do leave the facility—and, with 45 escapes, the record indicates that it happens regularly—information is simply sent to the Springfield Township police department. But the detective for Springfield Township who testified said that they do not actually pursue the children. The AWOL Hillcrest residents are rolled into his other runaway cases. The only work the detective does

with those cases is contacting Hillcrest regularly to see if they have been brought back so he can remove them from his tracking. In fact, he testified that he had never once actually gone out to look for a child as a result of an AWOL report from Hillcrest. It is hard to imagine how this would qualify as "measures sufficient to ensure the safety of the surrounding community."

{¶29} For similar reasons, I would also conclude that Hillcrest does not have safeguards such that the juvenile is not "free to come and go as he wished" and is "subject to the control of the staff regarding personal liberties." While there was testimony that the children's day is structured and supervised, there is no real consequence for noncompliance. Joseph Kurtz, Director of Student Services at Hillcrest, testified as follows:

Q. So, in other words, the child does have control over what they choose to do or not to do? They just have consequences that are in line with what they choose to do or not to do?

A. The child has choices. And so from the staff standpoint, we would deal with the choices that the child has made. We'll document the progress or lack of progress they are making.

Q. They're not forced to go to this - - there's nobody that pulls them up off their feet, drags them to go to school?

A. Correct.

Q. Nobody that forces them to go to behavioral training or modification or anything on those things?

A. Correct.

{¶30} Kurtz also testified that Hillcrest had no real way to securely contain juveniles who were persistently noncompliant. While noting that a few of the offices had been used on an ad hoc basis to secure individuals, the facility does not have any rooms or buildings designed for that purpose. In my view, choices with no real consequences are not such a restraint on the personal liberties of the juveniles in the program to constitute confinement.

{¶31} In a recent case, the Third Appellate District found that time spent in the West Central Juvenile Rehabilitation Center was confinement for the purposes of R.C. 2152.18(B). *In re D.P.*, 3d Dist. Auglaize Nos. 2-15-13 and 2-15-14, 2016-Ohio-747. The court noted that when the juvenile was allowed to leave on the weekends, he was placed on electronic monitoring and that, failure to return would constitute escape. *Id.* at ¶ 25. Additionally, the West Central Juvenile Rehabilitation Center was a "community corrections facility," which means that the juveniles were under "secure care and supervision twenty-four hours a day." *See* Ohio Adm.Code 5139-36-01(K). *See also In re K.A.*, 6th Dist. Lucas No. L-12-1334, 2013-Ohio-3847, ¶ 2 (giving credit for "confinement" while the juvenile was held in a "community corrections facility"). Similarly, the Eighth Appellate District determined that a juvenile was entitled to credit for confinement when he was detained in a "locked intensive treatment unit" from which he was not free to come and go. *In re J.K.S.*, 8th Dist. Cuyahoga Nos. 101967 and 101968, 2015-Ohio-1312, ¶ 12.

{¶32} On the other hand, Hillcrest is a "children's residential center" that is, according to Kurtz, "any facility that is over 11 children that is non secure and 24 hours of supervision." Any restraints on T.W.'s liberty were so incidental to his age that they were more akin to the restrictions on a child at boarding school. They do

not compare to the restraints that have been found to be sufficient by our sister districts.

{¶33} And I believe that this is the problem with the courts attempting to define which facilities will qualify for detention credit. Throughout Ohio, there are a limited variety of facilities that juvenile courts can utilize to house juveniles as the result of delinquency proceedings. The General Assembly is the branch better capable of investigating these types of facilities and determining which qualify for sentencing credit. But with 12 appellate districts making independent determinations, we may come to inconsistent results which will only further confuse matters.

{¶34} This court's experience with the question makes the point. In *In re D.P.*, this court remanded the case to the trial court because we did not have enough "evidence as to the nature of Hillcrest and the nature of the staff's control regarding D.P.'s personal liberties" and the "severity of the restrictions placed upon D.P.'s freedom." *In re D.P.* at ¶ 20. The transcript from the resulting proceeding below reads more like it came from a hearing before the Judiciary Committee of the Ohio House of Representatives. The court is not the place to craft the corrections policy of the state of Ohio, and I would strongly encourage members of the General Assembly to take up the task of fleshing out this legislation to clarify which facilities fall within the definition of confinement.

{¶35} If we are compelled to continue to utilize this definition of confinement, which I do not believe is appropriate, I do not think that Hillcrest satisfies the test. Therefore, I respectfully dissent.

Please note:
    The court has recorded its own entry on this date.

12