[Cite as *In re A.S.*, 2019-Ohio-2558.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.S. | : | APPEAL NOS. C-180045 |
| | | C-180046 |
| | : | TRIAL NOS. 16-7750Z |
| | | 17-2985Z |
| | : | |
| | : | *O P I N I O N.* |

**Appeals From:** Hamilton County Juvenile Court

**Judgments Appealed From Are:** Affirmed in Part, Reversed in Part, and Cause
Remanded in C-180045; Vacated in C-180046

**Date of Judgment Entry on Appeal:** June 26, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*,
Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller*, Hamilton County Public Defender, and *Julie Kahrs Nessler* and
*Caitlin J. Burgess*, Assistant Public Defenders, for Appellant A.S.

**WINKLER, Judge.**

{¶1} Appellant A.S. appeals the judgments of the juvenile court revoking his probation in two delinquency cases, and committing him to the Department of Youth Services ("DYS"). We determine that the juvenile court violated A.S.'s due-process rights by revoking his probation in the case numbered 17-2985Z without following Juv.R. 29 and 35. With respect to the case numbered 16-7750Z, we determine that the juvenile court erred in failing to give A.S. credit toward his DYS commitment for the days he spent at Abraxas Youth Center ("Abraxas").

## I.  Facts and Procedure

{¶2} In November 2016, the state filed a delinquency complaint against A.S. alleging that he had committed what would be the offense of burglary, if committed by an adult. The juvenile court adjudicated A.S. delinquent, imposed a suspended commitment to DYS, and placed A.S. on probation. In May 2017, the state filed another delinquency complaint against A.S. for receiving stolen property ("RSP"), accompanied by a firearm specification. The juvenile court adjudicated A.S. delinquent, imposed a suspended commitment to DYS, and placed A.S. on probation at Abraxas—a residential, behavioral-health facility.

{¶3} In November 2017, the state filed a probation-violation complaint in A.S.'s 2016 burglary case, alleging that A.S. had violated his probation by absconding from Abraxas. The state did not file a probation-violation complaint in A.S.'s RSP case.

{¶4} The magistrate held a hearing on the probation violation and A.S. indicated that he was prepared to admit to the violation. The magistrate told A.S. that by admitting to the probation violation, he could be sent to DYS for a minimum

of six months, up to the age of 21. Neither the state nor the magistrate mentioned A.S.'s RSP case. A.S. admitted to violating his probation, and the matter was continued for disposition.

{¶5} At the dispositional hearing, the state asked the juvenile court to "reopen" A.S.'s RSP case in order to impose the suspended commitment in that case, in addition to imposing the suspended commitment in the burglary case. A.S.'s attorney objected to the imposition of the suspended commitment in the RSP case on notice grounds. The juvenile court followed the state's recommendation and imposed a DYS commitment of six months, up to the age of 21, in A.S.'s burglary case, and also imposed a DYS commitment of six months, up to the age of 21, in A.S.'s RSP case, plus an additional 12 months for the firearm specification. The juvenile court imposed the commitments in both cases consecutively.

{¶6} A.S. filed a motion requesting confinement credit for the time he spent at Abraxas to reduce the minimum period of his DYS commitment. The juvenile court held an evidentiary hearing to consider whether Abraxas had measures sufficient to ensure the safety of the surrounding community, and whether staff controlled the youths' personal liberties, such that Abraxas constitutes confinement. The juvenile court determined that Abraxas did not constitute confinement.

{¶7} A.S. has appealed.

## II. Due Process under Juv.R. 29 and 35

{¶8} We address A.S.'s second assignment of error first. In this assignment, A.S. argues that his due-process rights were violated when the juvenile court imposed the suspended commitments without following the procedures laid out in Juv.R. 29 and 35.

3

{¶9}    Similar to adults facing criminal charges, juveniles who are subject to delinquency proceedings "are entitled to proceedings that 'measure up to the essentials of due process and fair treatment.' " *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 14, citing *Kent v. United States*, 383 U.S. 541, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).   Due-process protections apply when the state seeks to revoke a juvenile's probation, and those protections are embodied in Juv.R. 29 and 35.  *See In re L.A.B.*, 121 Ohio St.3d 112, 2009-Ohio-354, 902 N.E.2d 471, ¶ 56.

{¶10} Juv.R. 29 governs adjudicatory hearings, including probation-revocation hearings.  *See id.* at syllabus.  An "adjudicatory hearing" is conducted by the juvenile court "to determine whether a child is * * * delinquent * * * or otherwise within the jurisdiction of the court."  Juv.R. 2(B).  Juv.R. 29 provides in relevant part,

> **(B) Advisement and Findings at the Commencement of the Hearing.**  At the beginning of the [adjudicatory] hearing, the court shall do all of the following: (1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance; (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing * * *.

> * * *

> **(C) Entry of Admission or Denial.**  The court shall request each party against whom allegations are being made in the complaint to admit or deny the allegations.

4

* * *

**(D) Initial Procedure Upon Entry of an Admission.** The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining []: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission[.]

{¶11} Juv.R. 35 applies specifically to proceedings after judgment, including probation revocation, and it provides in relevant part,

**(A) Continuing Jurisdiction; Invoked by Motion.** The continuing jurisdiction of the court shall be invoked by motion filed in the original proceeding, notice of which shall be served in the manner provided for the service of process.

**(B) Revocation of Probation.** The court shall not revoke probation except after a hearing at which the child shall be present and apprised of the grounds on which revocation is proposed. The parties shall have the right to counsel and the right to appointed counsel where entitled pursuant to Juv. R. 4(A). Probation shall not be revoked except upon a finding that the child has violated a condition of probation of which the child had, pursuant to Juv. R. 34(C), been notified.

{¶12} Here, with respect to A.S.'s RSP case, no motion was filed alleging a probation violation, which is required under Juv.R. 35 to invoke the continuing jurisdiction of the court. The juvenile court never held a hearing to determine whether A.S. violated a probation condition in his RSP case as required by Juv.R. 35.

5

Furthermore, with respect to A.S.'s RSP case, the juvenile court did not hold a hearing to determine whether the notice requirements had been met or waived, and whether A.S. admitted to the probation violation, and the possible consequences of an admission, as required by Juv.R. 29. Therefore, we hold that the juvenile court's failure to follow Juv.R. 29 and 35 with respect to revoking A.S.'s probation in his RSP case violated his right to due process.

{¶13} With respect to A.S.'s burglary case, A.S. argues that the juvenile court failed to follow Juv.R. 35(B) by revoking his probation without determining whether he had been previously notified of the probation condition as required by Juv.R. 34. Juv.R. 34(C) provides: "In all cases where a child is placed on probation, the child shall receive a written statement of the conditions of probation. If the judgment is conditional, the order shall state the conditions."

{¶14} Ohio appellate courts have held that a juvenile court errs in revoking a juvenile's probation without determining whether the juvenile had received notice of the conditions of probation as required by Juv.R. 35(B). *See In re L.S.*, 6th Dist. Ottawa Nos. OT-17-021 and OT-17-025, 2018-Ohio-4758, ¶ 49; *In re A.R.D.*, 12th Dist. Butler Nos. CA2008-04-095 and CA2008-04-103, 2009-Ohio-1306, ¶ 13. One appellate court held that the juvenile court failed to comply with Juv.R. 35(B) by failing to inquire whether a juvenile had received a written statement of probation conditions, even though a written, signed statement of probation conditions appeared in the record. *See In re T.W.*, 11th Dist. Ashtabula No. 2011-A-0035, 2011-Ohio-6855. By contrast, another appellate court held that the juvenile court did not commit reversible error under Juv.R. 35(B) in revoking the juvenile's probation where the record showed that the juvenile signed a written list of probation

conditions, the juvenile admitted to violating probation, and the juvenile never argued before the juvenile court that he did not have notice of his probation conditions. *See In re J.G.*, 12th Dist. Butler No. CA2007-10-250, 2008-Ohio-2260, ¶ 42.

{¶15} Here, the juvenile court found that A.S. violated a condition of probation in his burglary case; however, it failed to affirmatively find that A.S. had been notified of that condition. Nevertheless, the record shows that the juvenile court sent A.S. to Abraxas, and that the state filed a complaint alleging that A.S. had violated rule 12 of his probation conditions, requiring him to adhere to all rules of placement and successfully complete Abraxas. The state alleged that A.S. had absconded from Abraxas. At the hearing on the probation-violation charge in A.S.'s burglary case, the state again notified the court and A.S. of the specific charge against A.S. A.S. admitted to violating this condition by absconding. The record also reflects a document containing the conditions of probation, which A.S. signed, and one of the conditions is adhering to all rules of placement and successfully completing Abraxas. Furthermore, A.S. never argued in the juvenile court that he did not receive notice of his probation conditions. Therefore, we hold that A.S.'s due-process rights were not violated by the juvenile court's failure to make an affirmative finding on the record that A.S. had notice of his probation conditions prior to revoking A.S.'s probation in his burglary case.

{¶16} We sustain A.S.'s second assignment of error with respect to A.S.'s RSP case, and we overrule A.S.'s second assignment of error with respect to his burglary case.

7

### III.    The Consequences of an Admission

{¶17}  We next address A.S.'s first assignment of error, in which A.S. argues that his admission to the probation violation was not knowing, voluntary, and intelligent, because the juvenile court failed to inform him of the potential commitment to DYS as a consequence of the admission.  A.S. argues that the juvenile court should have explained to him that an admission to a probation violation would result in the revocation of his probation in both of his cases.

{¶18}  Admissions in delinquency proceedings are analogous to guilty pleas in adult criminal proceedings.  *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 112.  Juv.R. 29(D) requires the juvenile court to personally address the juvenile on the record prior to accepting an admission to delinquency allegations.  *Id.* Juv.R. 29(D) provides:

> **Initial Procedure Upon Entry of an Admission.**  The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following: (1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission; (2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶19}  The Ohio Supreme Court has held that strict compliance with Juv.R. 29(D) is preferred, but "[i]f the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a

8

showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver." *In re C.S.* at paragraph six of the syllabus. "For purposes of juvenile delinquency proceedings, substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea." *Id.* at ¶ 113.

{¶20} In support of A.S.'s argument that the juvenile court had a duty under Juv.R. 29(D) to explain to him that an admission to a probation violation in the burglary case would result in the imposition of the suspended commitment in his RSP case, A.S. cites two Eighth District cases: *In re T.B.*, 8th Dist. Cuyahoga Nos. 93422 and 93423, 2010-Ohio-523, and *In re A.R.*, 8th Dist. Cuyahoga Nos. 104869, 104870, 104871, 104872, 104873, 104875 and 104876, 2017-Ohio-8058.

{¶21} In *In re T.B.*, the juvenile court found the juvenile delinquent of two charges in two separate cases. The juvenile court placed the juvenile on probation with suspended commitments to DYS. The state filed a notice of probation violation in only one of the juvenile's cases. The juvenile court conducted a hearing on the juvenile's admission to the violation, and the magistrate stated, "I could impose the sentence that has been previously stayed against you." After accepting the juvenile's admission, the juvenile court imposed the suspended commitments in both of the juvenile's cases. The Eighth District held that the juvenile court did not substantially comply with Juv.R. 29(D) because "it failed to advise [the juvenile] of the specific term he faced if committed to ODYS." *In re T.B.* at ¶ 9.

{¶22} In *In re A.R.*, the juvenile court invoked the suspended commitments for the juvenile on seven separate cases, even though the state had filed a notice of violation in only one of the cases. At the hearing on the probation violation, the

juvenile court addressed the juvenile as follows: "The penalty for this is going to be to send you to ODYS. I will give you credit for time served, but the balance of whatever time that you have not served, you may have to serve at ODYS." *In re A.R.* at ¶ 7. In determining that the juvenile court did not substantially comply with Juv.R. 29(D), the Eighth District held that "[a]lthough the juvenile court stated that it was going to send [the juvenile] to ODYS, it did not explain the minimum or maximum terms of commitment that may result in the acceptance of an admission." *In re A.R.* at ¶ 13.

{¶23} Although the underlying facts in *In re T.B.* and *In re A.R.* are similar to the appeals here in that the state filed a notice of probation violation in only one case and the juvenile court revoked probation in other cases, the analysis in those appeals is distinguishable. The courts in *In re T.B.* and *In re A.R.* focused solely on whether the juvenile court had substantially complied with Juv.R. 29(D) in accepting the juveniles' admissions. In these appeals, A.S. argues, and this court agrees, that the juvenile court violated A.S.'s due-process rights by revoking his probation in a case in which the juvenile court did not comply with Juv.R. 29(B), (C), and (D), and 35. Therefore, the question before this court is whether, at the time A.S. entered an admission to violating probation in his burglary case, the juvenile court had a duty to explain to A.S. that he could face probation revocation in his RSP case, even though no motion had been filed alleging a probation violation in the RSP case.

{¶24} Juv.R. 35, governing probation violations, requires the filing of a motion in the original delinquency proceeding in order to invoke the juvenile court's continuing jurisdiction. *See* Juv.R. 35(A). Because the state never alleged a probation violation in A.S.'s RSP case as required by Juv.R. 35, the juvenile court's continuing jurisdiction in A.S.'s RSP case had not been invoked at the time of A.S.'s

probation-revocation hearing in his burglary case. Therefore, we determine that the juvenile court had no duty to notify A.S. that a potential consequence of an admission to a probation violation could result in the revocation of probation in a separate case not before the court.

{¶25} The magistrate informed A.S. that a potential consequence of an admission to a probation violation in his burglary case could be a commitment to DYS for a minimum of six months, up to the age of 21, which was the term imposed by the juvenile court. As a result, we hold that the juvenile court substantially complied with Juv.R. 29(D) in accepting A.S.'s admission to violating probation in his burglary case. We overrule A.S.'s first assignment of error.

### IV. Confinement Credit for Abraxas

{¶26} In his third assignment of error, A.S. argues that the juvenile court erred in denying him confinement credit for his time spent at Abraxas. R.C. 2152.18(B) governs confinement credit for juveniles, and it states:

> When a juvenile court commits a delinquent child to the custody of the department of youth services pursuant to this chapter, the court shall state in the order of commitment the total number of days that the child has been confined in connection with the delinquent child complaint upon which the order of commitment is based. The court shall not include days that the child has been under electronic monitoring or house arrest or days that the child has been confined in a halfway house. The department shall reduce the minimum period of institutionalization that was ordered by both the total number of days that the child has been so confined as stated by the court in the order

11

of commitment and the total number of any additional days that the

child has been confined subsequent to the order of commitment but

prior to the transfer of physical custody of the child to the department.

The juvenile-delinquency statutes do not define the term "confined" as used in R.C. 2152.18(B).

{¶27} This court first sought to define confinement as used in R.C. 2152.18(B) in *In re D.P.*, 1st Dist. Hamilton No. C-140158, 2014-Ohio-5414. In *In re D.P.*, this court rejected the notion that juveniles should only receive confinement credit for time spent in a lockdown facility, and instead adopted the interpretation of confinement from the adult criminal system as laid out in *State v. Napier*, 93 Ohio St.3d 646, 647, 758 N.E.2d 1127 (2001). The *D.P.* court determined that juvenile courts must conduct a fact-intensive inquiry to determine whether the time a juvenile spends at a residential facility counts as confinement:

[J]uvenile courts must review the nature of the facility, to see if it is a secure facility with measures sufficient to ensure the safety of the surrounding community. They must also review the nature of the restrictions on the juvenile at the facility to determine if the juvenile was 'free to come and go as he wished' or if he was 'subject to the control of the staff regarding personal liberties' as contemplated by *Napier*.

(Internal citations omitted.) *In re D.P.* at ¶ 18, quoting *Napier*.

{¶28} Several appellate districts have also applied the *Napier* standard to determine whether a juvenile has been confined under R.C. 2152.18(B). *See In re D.P.*, 3d Dist. Auglaize Nos. 2-15-13 and 2-15-14, 2016-Ohio-747, ¶ 20; *In re K.A.*, 6th

Dist. Lucas No. L-12-1334, 2013-Ohio-3847, ¶ 5; *In re J.K.S.*, 8th Dist. Cuyahoga Nos. 101967 and 101968, 2015-Ohio-1312, ¶ 12; *In the Matter of J.C.E.*, 11th Dist. Geauga No. 2016-G-0062, 2016-Ohio-7843, ¶ 31; *In re J.A.*, 2018-Ohio-1609, 100 N.E.3d 447, ¶ 43-45 (5th Dist.).

{¶29} This court applied the *Napier* standard as outlined in *In re D.P.* in considering whether a juvenile housed at Hillcrest School was entitled to confinement credit. *See In re T.W.*, 2016-Ohio-3131, 66 N.E.3d 93 (1st Dist.). In *In re T.W.*, this court first examined the measures Hillcrest staff used to ensure the safety of the surrounding community. The court determined that the youths needed staff permission to leave Hillcrest, and that staff members would physically stop a youth who left without permission. If a youth did abscond, the staff contacted police, who issued a warrant.

{¶30} With respect to Hillcrest staff members' control over the juveniles' personal liberties, the court determined that staff escorted juveniles around the campus, and staff restricted the juveniles' access to their rooms. If a juvenile attempted to leave the room without permission, an alarm sounded. Juveniles needed staff permission to use the restroom or get a drink of water. The Hillcrest staff monitored the youths 24 hours a day, and the campus had 111 cameras. Based on these facts, the *In re T.W.* court determined that the juvenile's time spent at Hillcrest constituted confinement for purposes of R.C. 2152.18(B).

{¶31} In this case, in determining whether Abraxas constitutes confinement, we examine the measures used to ensure the safety of the surrounding community, and the staff control over the juveniles' personal liberties.

13

### A. Measures for the Safety of the Surrounding Community

{¶32}  With regard to the safety of the community surrounding Abraxas, the evidence shows that the 88-acre facility is located in a somewhat rural area of Ohio, with the closest city being two to three miles away in Shelby, Ohio.  The interior and exterior doors of the facility operate with a key-fob locking mechanism.  Although a juvenile could physically open a door without a key fob, an alarm sounds if a door is opened without the key.   Only staff members have access to the key fobs.   The Abraxas staff members use security checklists daily to make sure that doors and windows are secure.  The staff use "eyeball" supervision over the youths 24 hours a day, and the facility has 79 cameras.  At night, the staff perform bed checks where a staff member must see a child's head, neck, and skin.

{¶33} In determining that Abraxas does not have measures sufficient to ensure the safety of the surrounding community, the juvenile court found relevant that the interior doors remain unlocked during the day, and at night the children could open the doors in such a way to prevent the alarm from sounding.  The juvenile court also noted that the windows did not have alarms, even though a window could only open by removing an air-conditioning unit.   The juvenile court also found relevant that Abraxas staff did not routinely monitor their cameras, and that the Abraxas staff would not attempt to physically restrain a child who leaves without permission.

{¶34}  We do not see any meaningful distinction between the safety measures used at Abraxas and those used at Hillcrest as outlined in *In re T.W.*  Although staff members at Abraxas cannot physically restrain a child attempting to leave without permission, staff members will attempt to counsel a child to return to the facility.  If

a child does abscond, staff members immediately contact law enforcement. The staff members also conduct a search of the property and surrounding areas looking for a missing youth. Depending on a child's situation, law enforcement may choose to detain a missing child once found. As shown in this case, A.S. left Abraxas without permission and faced a probation violation and a DYS commitment as a result. Therefore, the safety measures used at Abraxas weigh in favor of a finding of confinement.

### B. Abraxas Staff Control over the Juveniles' Personal Liberties

{¶35} With regard to staff control over the children's personal liberties at Abraxas, the evidence shows that the youths are constantly monitored, and this includes headcounts every 15 minutes throughout the day and night. Abraxas staff members control the youths' schedules throughout the day, and staff members escort the juveniles around the campus in groups. Juveniles cannot have cell phones, and they have limited, supervised internet access. Juveniles must have staff permission to use the restroom. The children can have visitors, but these visits must be preapproved and supervised. The children cannot leave the facility unless they earn home or day passes through positive progress in their school and treatment programs.

{¶36} In determining that the staff have "little" control over the juveniles' personal liberties at Abraxas, the juvenile court found relevant that the children can choose how to spend their recreation time, and that the children cannot be physically forced to do an activity. The juvenile court also noted that the children can choose their clothing. The juvenile court also noted that the children can leave the Abraxas

campus to participate in an activity in the community, and can earn time to visit home.

{¶37} Even though children cannot be physically forced to do any activity, if a child does not complete his or her treatment program, then a probation violation may result. The children can "choose" what color polo shirt to wear, but it must be one of four colors. Although children are permitted to leave the Abraxas campus, staff control when and where the children may go, so that children cannot leave at their discretion. Again, the evidence of staff control over the children's personal liberties at Abraxas is not distinguishable from the staff control over the children's personal liberties at Hillcrest.

{¶38} Accordingly, we determine that A.S.'s time spent at Abraxas constitutes confinement for purposes of R.C. 2152.18(B). Therefore, we sustain A.S.'s third assignment of error.

## V.    Conclusion

{¶39} We vacate the juvenile court's judgment in the appeal numbered C-180046 revoking A.S.'s probation in his RSP case. We affirm the portion of the judgment in the appeal numbered C-180045 revoking A.S.'s probation in his burglary case, but we reverse that portion of the judgment calculating A.S.'s confinement credit. We remand the matter with instructions to the juvenile court to recalculate A.S.'s confinement credit allowing him to receive credit for his time at Abraxas.

Judgment accordingly.

**BERGERON, J.,** concurs.
**MOCK, P.J.,** concurs in part and dissents in part.

**MOCK, P.J.,** concurring in part and dissenting in part.

{¶40} While I agree with the majority's determination of the appeal in the case numbered 17-2985Z, I would hold that the trial court properly determined A.S.'s credit toward his DYS commitment for the days he spent at Abraxas Youth Center. I therefore dissent from the determination of the appeal in the case numbered 16-7750Z.

{¶41} The majority relies heavily on this court's decision in *In re T.W.*, 2016-Ohio-3131, 66 N.E.3d 93 (1st Dist.). And I dissent for the same reasons that I dissented in that case. The nature of confinement between adults and juveniles is simply not comparable, and I do not believe that we can consider the same types of factors when determining whether a child has been "confined" as that term is used in R.C. 2152.18(B). *Id.* at ¶ 22-25. But even considering those factors, I would conclude that A.S. was not confined while residing at Abraxas. The confinement at Abraxas was even less restrictive than the confinement at issue in *T.W.* As a result, I would conclude that the trial court properly declined to give A.S. credit for the time. I therefore dissent from that portion of the majority's opinion.

Please note:
   The court has recorded its own entry on the date of the release of this opinion.